IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BELINDA D. ERICKSON,<br><br>               Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>               Defendant. | CV 17-16-M-DLC-JCL<br><br>FINDINGS &<br>RECOMMENDATION |

Plaintiff Belinda Erickson brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Erickson alleges disability since August 17, 2012, when she fell and injured herself while walking across a parking lot. Erickson's claim was denied initially and on reconsideration, and she requested an administrative hearing. In November 27, 2015, the Administrative Law Judge (ALJ) issued a decision finding Erickson not disabled within the meaning of the Act. The Appeals Council denied Erickson's request for review, making the ALJ's decision the agency's final decision for purposes of judicial review. Jurisdiction

vests with this Court pursuant to 42 U.S.C. § 405(g).

Erickson was 47 years old at the time of her alleged onset date and 50 years old at the time of the ALJ's decision.

## I. Standard of Review

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court

"may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II.     **Burden of Proof**

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed

impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii).

If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

## III. Discussion

The ALJ found at step one that Erickson meets the insured status requirements of the Act through December 31, 2019. The ALJ further found that although Erickson alleged a disability onset date of August 17, 2012, she would be ineligible for benefits until the start of 2014 because she had engaged in substantial gainful activity through the years 2012 and 2013. At step two, the ALJ found that Erickson's lumbar degenerative disc disease and obesity were severe impairments. The ALJ concluded at step three that Erickson did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. The ALJ further found that while Erickson's impairments could reasonably be expected to cause her alleged

4

symptoms, her statements regarding the severity of those symptoms were not entirely credible. The ALJ concluded that Erickson had the residual functional capacity to perform a reduced range of light work. Based on that residual functional capacity assessment, the ALJ found at step four that Erickson could perform past relevant work as a customer service representative and office clerk. Because Erickson could perform past relevant work, the ALJ concluded that she was not disabled within the meaning of the Act. (Doc. 4-2, at 20-32).

Erickson argues the ALJ's finding that she has the residual functional capacity to perform a reduced range of light work is not supported by substantial evidence, and raises four issues on appeal. First, Erickson maintains the ALJ did not provide legally sufficient reasons for rejecting the opinion of her treating and examining physicians. Second, Erickson contends the ALJ did not provide clear and convincing reasons for discounting her subjective testimony. Third, Erickson argues the ALJ did not provide germane reasons for discounting a lay witness statement provided by her husband. Finally, Erickson maintains the ALJ erred by finding her capable of performing past relevant work.

### A. Medical Opinions

The weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other

5

evidence in the record. 20 C.F.R. § 404.1527(d)(2). An ALJ may reject the uncontradicted opinion of a treating or examining physician only for clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To discount the controverted opinion of a treating or examining physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 830. The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bown*, 881 F.2d 747, 751 (9th Cir. 1989).

    1.    <u>Dr. Scott Jahnke</u>

Erickson argues the ALJ erred by not giving more weight to medical records from Dr. Scott Jahnke. Erickson established care with Dr. Jahnke in January 2013, approximately six months after the slip-and-fall injury that marked her alleged onset date. Erickson described having sharp burning pain in her back, hip, and legs, and reported being unable to sit for more than five or ten minutes at a time. Lumbar x-rays at that time were within normal limits, but Dr. Jahnke confirmed based on prior diagnostic imaging that Erickson had degenerative disc disease of the lumbar spine. Dr. Jahnke prescribed medication for Erickson's pain, completed a work restriction form on which he checked a box indicating she "cannot work,"

6

and directed her to follow up with him in two weeks. (Doc. 4-7, at 218-23).

Erickson did not return to Dr. Jahnke again until August 2013, at which time she reported having pain at a level 8 on a scale of 1 to 10. Dr. Jahnke noted that Erickson had not worked since January 2013, but he was "not sure why she has never been put back to work." (Doc. 4-7, at 215). Nevertheless, he completed an identical work restriction form again indicating by check-mark that Erickson "cannot work." (Doc. 4-7, at 232). Dr. Jahnke saw Erickson roughly ten more times between September 2013 and March 2014, when she established care with a different doctor. (Doc. 4-7, 184-214).

Erickson contends the ALJ erred by not giving more weight to Dr. Jahnke's treatment notes and, more specifically, to the two work restriction forms he completed in January and August of 2013. Contrary to Ericksons' argument, any error on the ALJ's part in not specifically discussing these forms was harmless. As noted above, the ALJ found at step one that Erickson had engaged in substantial gainful activity through 2013, and the earliest she could be eligible for benefits was the beginning of 2014. Consistent with this determination, the ALJ pointed out that when Dr. Jahnke saw Erickson in October 2013, she was continuing to work for a day care and was responsible for taking care of the youngest babies. (Doc. 4-2, at 27; 4-7, at 206). Erickson does not contest the ALJ's step one finding on appeal.

7

The work restriction forms were both completed while Erickson was still engaged in substantial gainful activity and say nothing about whether she would have been able to work during 2014 or thereafter.

Moreover, the two forms contain only one check-mark and provide no assessment or discussion whatsoever of Erickson's functional limitations. Dr. Jahnke did not complete the "weight restrictions" and "functional restrictions" sections of the forms, did not respond to a question asking for an estimated date of return to full duty, and did not provide any handwritten comments. At most, Dr. Jahnke's opinion as set forth on these forms by way of a single check-mark can be characterized as a conclusory and brief opinion that Erickson was unable to work for some unspecified period of time. As such, the forms were not entitled to any special weight and any error on the ALJ's part in not specifically discussing them was harmless. See e.g. *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 2018) (conclusory, brief, and clinically unsupported statements by a treatment physician need not be credited by the ALJ); *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (error is harmless if the "the ALJ's decision remains legally valid, despite such error"); 20 C.F.R. § 404.1527(d) (the agency does not give any special significance to statements that a claimant is disabled, because such statements "are not medical opinions…but are, instead, opinions on issues reserved

8

to the Commissioner…").

This is so particularly in light of the fact the ALJ thoroughly considered Dr. Jahnke's treatment notes, which generally reflected that Erickson's symptoms and pain level improved throughout 2013 with treatment. As the ALJ pointed out, for example, Erickson's left side pain had completely resolved by November 2013, and it was not until she fell again in late December 2013 that began reporting increased pain. (Doc. 4-2,a at 28; 4-7, at 184-221). While Dr. Jahnke's records reflect that Erickson's degenerative disc caused her some amount of pain and limitation, the ALJ reasonably found they were not consistent with a disabling level of impairment. While Erickson offers an interpretation of Dr. Jahnke's medical records that differs from the ALJ's, it was wholly within the province of the ALJ to weigh the medical evidence. See *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ found with record support that Dr. Jahnke's treatment notes did not support a finding of disability.

### B. Subjective Symptom Testimony

Erickson argues the ALJ did not provide sufficiently clear and convincing reasons for discounting her subjective symptom testimony. If the ALJ finds "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms

9

alleged," and "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citations omitted). Erickson met her initial burden because she provided evidence that she has underlying impairments that could reasonably be expected to produce some degree of pain and other symptoms, and the ALJ did not find that she was malingering.

The ALJ considered Erickson's testimony, but found her less than entirely believable for several reasons. First, the ALJ found the fact that Erickson engaged in substantial gainful activity after her alleged onset date undermined her testimony as to the severity of her symptoms. In particular, the ALJ found that evidence showing Erickson continued to run her own business and was working at a daycare through 2013 was not consistent with her allegations of disability since August 2012. (Doc. 4-2, at 27, 29). The ALJ permissibly found that Erickson's work activity suggested her pain was not as severe as she claimed and that she was capable of doing more than she alleged. See e.g *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (upholding credibility finding where claimant continued to work "under the table" after his date last insured); *Perkins v.* Astrue, 535 F.Supp.2d 986, 993 (C.D. Cal. 2008) (citing *Greger* and finding that "[e]vidence

that a claimant actually worked during a period of claimed disability clearly supports an adverse credibility determination).

Second, the ALJ found that Erickson's subjective complaints were not consistent with the objective physical findings. In particular, the ALJ discussed the fact that although Erickson consistently reported high levels of pain on a scale of 1 to 10 when she visited Dr. Jahnke, those reports were not supported by his physical examination findings. (Doc. 4-2, at 27). During a visit on March 24, 2014, for example, Erickson reported her pain was at a level of 10 but Dr. Jahnke described her as alert, pleasant, and oriented, and observed she was ambulatory with a somewhat measured gait but no specific antalgia. (Doc. 4-7, at 184). The ALJ also cited the results of an independent medical examination performed by a panel of physicians in March 2013, which showed that while Erickson complained of "subjective leg numbness" there were "no objective findings for this." (Doc. 4-2, at 28; 4-7, at 127). In addition, the ALJ cited records from Dr. Stephen Cohen, who saw Erickson on a referral from one of her treating physicians in February and March 2015. (Doc. 4-2, at 28; 4-7, at 279-283). The ALJ found it particularly notable that when Erickson saw Dr. Cohen for the second time, she reported a very different pain distribution than she had at her first visit, and Dr. Cohen wrote that he could not "match the pain generator in her back with today's pain report any

11

more than I can manage it with last month's." (Doc. 4-2, at 28; 4-7, at 279). While it would have been error for the ALJ to discount Ericksons' testimony based solely on the lack of objective medical findings, it was one appropriate factor for him to consider. See *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). See also *Bray v. Comm's of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

Third, the ALJ considered Erickson's demeanor and physical behavior during the September 2015 administrative hearing. (Doc. 4-2, at 29). The ALJ observed that Erickson was "bouncing around during the hearing, going back and forth between sitting and standing in what appeared to be a very exaggerated manner." (Doc. 402, at 29). He saw that toward the end of the hearing, Erickson "began shaking her hands," which was an "activity that has not been documented by [a] single medical provider through the most recent medical records." Furthermore, although Erickson has consistently claimed she cannot sit for more than five minutes at a time, the ALJ noted that "as the hearing wore on, [she] appeared to sit very comfortably for more than 10 minutes at a time." (Doc. 4-2, at 29). The ALJ permissibly considered Erickson's behavior at the hearing and found that it undercut her credibility as to the extent of her pain and limitations. See e.g. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

Erickson does not specifically challenge any of the three reasons discussed above. She focuses instead on a fourth reason provided by the ALJ for discounting her testimony, namely, that her alleged use of a cane for walking was not supported by the record. Erickson argues the ALJ overlooked evidence in the record showing she did in fact use a cane for walking. Although Erickson testified she has consistently needed to use a cane since she was injured in August 2012, the ALJ pointed to evidence showing she often arrived at medical appointments without a cane and her doctors described her as ambulatory. (Doc. 4-2, at 26-27). The ALJ appropriately found that Erickson's alleged need to use a cane for walking was not supported by the record, which undermined her credibility. But even if this reason was not supported by substantial evidence, the ALJ otherwise provided sufficiently clear and convincing reasons for discounting Erickson's subjective testimony as discussed above.

### C. Lay Witness

Erickson next argues the ALJ did not provide germane reasons for discounting a third-party statement provided by her husband. Erickson's husband wrote that ever since her injury in August 2012, Erickson had been in severe pain and had difficulty with activities of daily living. (Doc. 40-6, at 90).

It is well-established in the Ninth Circuit that the "ALJ must consider lay

13

witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 2003); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e)). "If the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Stout*, 454 F.2d at 1053 (quoting *Dodrill*, 12 F.3d at 919). But if the ALJ provides clear and convincing reasons for rejecting the claimant's own subjective complaints, and the lay witness testimony is similar to the claimant's complaints, then the reasons for discounting the claimant's testimony are also germane to the lay witness and any error in failing to more specifically discuss the lay testimony is harmless. *See Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (upholding rejection of family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's testimony); *Molina v. Astrue*, 674 F.3d 1104, 1115-17 (9th Cir. 2012).

As discussed above, the ALJ gave clear and convincing reasons for discounting Erickson's subjective complaints. The ALJ found that the statement provided by Erickson's husband contained "observations that closely correlate to the claimant's allegations," and gave it the same weight as Erickson's own subjective allegations. (Doc. 4-2, at 30). Because the ALJ gave clear and

14

convincing reasons for rejecting Erickson's subjective complaints, and the lay witness statement mirrored those complaints, the ALJ appropriately gave the lay witness statement the same weight as Erickson's testimony and any error on the ALJ's part in failing to more specifically reject the lay witness statement was harmless. *See Valentine*, 574 F.3d at 694.

### D. Past Relevant Work

Erickson maintains the ALJ's residual functional capacity assessment for a limited range of light work is not supported by substantial evidence and his step four finding that she could perform past relevant work is thus erroneous. To the extent Erickson's contends the residual functional capacity assessment is not consistent with Dr. Jahnke's opinions, the lay witness testimony, and her own subjective testimony, her argument fails for the reasons set forth above.

Erickson additionally argues the ALJ's determination that she could perform a limited range of light work is not supported by any of the functional capacity assessments in the record. Erickson cites to the independent medical examination performed by a panel of physicians in March 2013. The panel concluded that Erickson could return to her sedentary position as a customer service representative as long as she began with three to four-hour shifts and worked up to eight-hour shifts and was given certain other accommodations like allowing her to frequently

change positions between sitting, standing and walking, and requiring minimal stooping, bending, twisting, and no lifting greater than 10 pounds (Doc. 4-7, at 128). The ALJ considered the panel's report, but did not incorporate all of these functional restrictions in large part based on other evidence showing that Erickson's symptoms improved later that year. Specifically, the ALJ noted that Dr. Jahnke's records showed Erickson was functioning quite well by December 2013, and it was not until she fell again later that month that she began to again report high levels of pain and a return of bilateral lower extremity symptoms. (Doc. 4-2, at 28). Erickson does not challenge any of the reasons provided by the ALJ in discounting the panel's report.

Erickson further points out that the state agency physicians indicated she would be limited to sedentary work based on her lifting and carrying abilities. (Doc. 4-3, at 3-10, 12-20). The ALJ considered these opinions as well, but did not accept that Erickson would be limited to sedentary work because the state agency physicians appeared "to give more weight to the FCE, the opinion of the consultative medical examiner, and to the claimant's subjective complaints" than the ALJ did. (Doc. 4-2, at 30).

It appears that Dr. Greg Vanichkachorn is the consultative medical examiner the ALJ was referring to. Dr. Vanichkachorn evaluated Erickson in July 2014 and

concluded after seeing her for twenty minutes that she should not lift/push/pull greater than 10 pounds and should alternate positions at least every 5-10 minutes. (Doc. 4-7, at 265). The ALJ noted that Dr. Vanichkachorn could find no evidence of radiculopathy despite Erickson complaining of a burning sensation in her legs and feet, and rejected his assessment of her functional limitations in large part because it appeared he placed too much reliance on Erickson's subjective complaints, which the ALJ discounted for clear and convincing reasons. (Doc. 4-2, at 30). Erickson does not specifically challenge the reasons provided by the ALJ for discounting Dr. Vanichkachorn's opinion.

The FCE the ALJ referred to in discounting the state agency physicians' opinions was done in January 2013. (Doc. 4-7, at 111). The examiner made several findings indicating that Erickson was exaggerating her symptoms and not providing maximal effort. For example, the examiner wrote that Erickson "demonstrated uncooperative behavior," and "was able to sit for over one half hour on both days of testing without signs of discomfort" which was "inconsistent with her history of limited sitting for not over five minutes at a time at home." (Doc. 4-7, at 112). The examiner also observed that Erickson "was able to stand for one half hour on the first day of testing" which was "inconsistent with her history of back pain with standing for five minutes at a time" and observed her "walking to

her appointment and between tasks with normal speed and minimal use of her cane," which was "inconsistent with her observed gait on both days of her walking task." (Doc. 4-7, at 112). The examiner explained that the results of the evaluation were not a good indicator of Erickson's abilities due to her self-limiting behavior. (Doc. 4-7, at 113). Thus, although the examiner found based on the results of the evaluation that Erickson would be limited to lifting and carrying 10 pounds – which is consistent with sedentary work -- the ALJ reasonably found based on Erickson's malingering behavior that the FCE and other evidence of record supported a finding that Erickson was capable of lifting up to 20 pounds occasionally and could perform a limited range of light work.

Nevertheless, Erickson is correct that there do not appear to be any functional capacity evaluations or medical opinions specifically stating that she would be capable of fulfilling the lifting and carrying requirements of light work. Even assuming the ALJ thus erred by finding Erickson had the residual functional capacity for the lifting requirements of light work, that error was harmless.

The ALJ found that Erickson was not disabled because she was capable of performing past relevant work as a customer service representative (DOT 249.362-026) and an office clerk (DOT 219.362-010) as actually and generally performed. (Doc. 4-2, at 31). The Dictionary of Occupational Titles (DOT) classifies the

18

customer service representative position (DOT 249.362-026) as sedentary work. 1991 WL 672320, DICOT 249.362-026 (2016). Although the office clerk position (DOT 219.362-010) is classified as light work in the DOT, the job as reported by Erickson was sedentary as she actually performed it. (Doc. 4-6, at 24). At the administrative hearing, the ALJ posed a second hypothetical to the vocational expert, which asked whether a person limited to sedentary exertional work would be able to "do the office clerk or customer service work." (Doc. 4-2, at 77). The vocational expert responded that although the officer clerk position was light work according to the DOT, it was sedentary as performed by Erickson. (Doc. 4-2, at 77). The vocational expert then answered that a person limited to sedentary work as described the ALJ in the second hypothetical would be capable of the office clerk position as actually performed, and the customer service position. (Doc. 4-2, at 77). An ALJ may rely on a vocational expert's "expertise and knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Because the vocational expert testified that a person limited to sedentary work as set forth in the second hypothetical could perform those positions, the ALJ's step four determination is supported by substantial evidence and any error on the ALJ's part in finding

19

Erickson capable of light rather than sedentary work was harmless. See *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 1984) (errors that do not affect the ultimate result are harmless).

## IV. Conclusion

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of prejudicial legal error. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

DATED this 30th<sup>h</sup> day of January, 2018.

_____
Jeremiah C. Lynch
United States Magistrate Judge